UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD KIRK BROWN,

        Plaintiff,                                No. 16-11837

v.                                            District Judge Sean F. Cox
                                                 Magistrate Judge R. Steven Whalen

STEVE RIVARD, ET AL.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

On May 12, 2016, Plaintiff Ronald Kirk Brown, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint, under 42 U.S.C. § 1983.[1] Before the Court is a Motion for Summary Judgment filed by Defendants Steve Rivard, Neil Siefker, Richard Kellogg, Natalie Souder, Jeremy Bugbee, Kathleen Sheets-Parsons, and Kelly Barnett [Doc. #20], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED IN PART AND DENIED IN PART, as follows:

That the Motion be GRANTED as to Defendants Rivard, Kellogg, Bugbee, Sheet-Parsons, and Barnett, and that these five Defendants be DISMISSED WITHOUT PREJUDICE under 42 U.S.C. § 1997e(a).

---

[1] Plaintiff originally filed his complaint in the United States District Court for the Western District of Michigan, which transferred the case to this Court on May 23, 2017, based on venue [Doc. #3].

That the Motion be DENIED as to Defendants Siefker and Souder, without prejudice to their filing a renewed motion for summary judgment following discovery.

## I. FACTS

The gist of Plaintiff's complaint is that Defendant Neil Siefker, an MDOC Corrections Officer ("CO"), retaliated against him for having filed a previous lawsuit against staff at the St. Louis Correctional Facility. He alleges that not only did Siefker harass him, but he ordered other staff members to harass him, all in retaliation for the previous lawsuit.

Defendant Kelly Barnett a/k/a Kelly Best ("Barnett") was an Assistant Deputy Warden. Plaintiff alleges that on June 21, 2014, Barnett ordered Siefker to "bully and harass" him in order to stymie his attempt to file a petition in the United States Supreme Court. *Complaint*, Statement of Facts, at 1. He alleges that this was done in retaliation for his having filed a previous lawsuit against Barnett. *Id*. at 2.

Plaintiff alleges that Siefker rifled through his legal papers until he found a copy of the previous lawsuit, and read aloud from it in front of other inmates, referring to Plaintiff as a rat and a snitch. *Id*. Siefker's harassment continued, including denying Plaintiff access to the law library. Plaintiff claims that Siefker told other inmates that they should kill the Plaintiff, and that Siefker told Nurse Souder to confiscate his prescription glasses. He alleges that Barnett and Defendant Parsons, a grievance coordinator, told staff members to make up false medical reports, and to remove records from his medical file. He says that Barnett instructed CO Kellogg and CO Ott to harass him, and that Siefker ordered Kellogg to not allow him out of his cell. *Id*. at 3-9. Plaintiff summarizes the situation as follows: "These Staff Members were all involved in the continued harassment of Petitioner at every turn, every day, all day while he was housed in the St. Louis prison

facility." *Id*. at 9.

Defendants, who seek dismissal in part based on Plaintiff's failure to properly exhaust his administrative remedies before filing his complaint, have submitted as Exhibit 2 to their motion [Doc. #20] copies of Plaintiff's MDOC grievances that were taken through Step III of the administrative process. Relevant to the Plaintiff's claims, the grievances show as follows:

### Grievance No. SLF 14-12-1504-19D

At Step I, Plaintiff alleges that his typewriter and other property were damaged "in retaliation for having to pack up this prisoner property because of C/O Siefker action over at the Law library do [*sic* due] to this Officer bullying." He names only Siefker and C/O Ott at Step I. At Step II, he complains that Ott is lying, but does not name any other Defendants. At Step III, he states that Siefker told Ott and Kellogg to stop him from gaining access to the courts. He names Kellogg for the first time at Step III.

### Grievance No. SLF 14-11-1471-17a

At Step I, Plaintiff complains of Siefker's ongoing harassment, including calling him a "snitch ass murderer" in front of other inmates, as well as harassment at the law library. He indicates that Siefker promised him that C/O Ott and C/O Kellogg would be involved in harassment. Plaintiff states for the first time at Step II that Barnett and C/O Harrington bullied him in retaliation for having filed a lawsuit. At Step III, he for the first time names Assistant Deputy Warden McCullick and Warden Rivard, alleging that they "covered up racial hatred" against him because of his lawsuit.

Grievance No. SLF-14-10-1307-17a

At Step I and Step II, Plaintiff names only Siefker, again alleging ongoing harassment in retaliation for his having filed a lawsuit. He alleges that Siefert tried to hit him with a chair in the law library. At Step III, Plaintiff for the first time names C/O Kellogg, saying that Warden Rivard has allowed Siefker and Kellogg to retaliate against him.

Grievance No. SLF-14-08-1120-01g

This grievance concerns Plaintiff's allegation that he was charged a $5.00 co-pay for a medical visit that never occurred. He names Defendant Nurse Souder at Step I, and the grievance was pursued through Step III.

Grievance Nos. 14-08-1014-15A and SLF-14-07-0900-12g

These grievances, taken through Step III, allege that Nurse Souder improperly confiscated Plaintiff's sunglasses.[2]

## II.   STANDARD OF REVIEW

### A.   Exhaustion

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of

---

[2] Exhibit 2 also contains an Administrative Hearing Report regarding the sunglasses. RN Souder states that Plaintiff's records showed him as having non-tinted prescription glasses, but that she observed him with the tinted glasses, which Plaintiff said he "bought on his own." Souder stated that Plaintiff had his state-issued prescription glasses. The hearing officer found that under MDOC Policy Directives, Plaintiff was not allowed to have the tinted glasses. Plaintiff filed his grievance following this determination.

the wrong or the type of relief sought.  *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90.   Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008)*.  Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

### B.   Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court,  construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III. DISCUSSION

#### A. Exhaustion

Defendants seek dismissal on the theory that Plaintiff failed to properly exhaust his administrative remedies before filing suit.

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints.[3] This grievance procedure consists of four acts an inmate must undertake prior to seeking judicial review, each with specific time

---

[3] PD 03.02.130 is reproduced in Exhibit 1 to Defendants' Motion.

limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

PD 03.02.130 § R provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being brieved are to be included." (Emphasis in original). Moreover, to constitute proper exhaustion under MDOC policy, a specific defendant must be identified at Step I of the process. *See Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007). ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").

Neither Defendants Rivard, Kellogg, Bugbee, Sheet-Parsons, nor Barnett were named at Step I of any grievance that Plaintiff filed; therefore, Plaintiff has not properly exhausted his claims as to these five Defendants, and they should be dismissed under 42 U.S.C. § 1997e(a).

On the other hand, Defendant Siefker was named at Step I in Grievance Nos.SLF 14-12-1504-19D, SLF 14-11-1471-17a, and SLF-14-10-1307-17a, in which Plaintiff alleged specific instances of Siefker's ongoing harassment. Likewise, Plaintiff named Defendant Nurse Souder at Step I in Grievance No. SLF-14-08-1120-01g, where he complains of being improperly charged a $5.00 co-pay, and claims Souder was involved in removing his medical file, and Grievance Nos. SLF 14-08-1014-15A and SLF 14-07-0900-12g, where Plaintiff alleges the improper confiscation of his glasses. Nonetheless, the Defendants argue that the grievances against Siefker and Souder did not properly exhaust the claims in Plaintiff's complaint because he "did not grieve any retaliatory conduct against any Defendants, and did not grieve any interference with mail against any Defendants." *Defendants' Motion* [Doc. #20], at pg. 15 of 31, Pg. ID 237.

The gravamen of Plaintiff's complaint is retaliation. He claims that Siefker retaliated against him through a continuous pattern of harassment, including reading his previous lawsuits aloud, labelling him as a "snitch," attempting to assault him with a chair, and instructing other MDOC staff, including Souder, to retaliate against him. ("RN Souder was given orders by C/O Siefker and ADW Kelly Best/Barnett to confiscate Petitioner's prescription glasses. See all attachments that were removed from his medical file." *Complaint*, [Doc. #1], p. 6, Pg. ID 11). He alleges that Souder destroyed his eyeglasses, and that, at the behest of Barnett, she made a false medical call-out that enabled her "to charge Petitioner $5.00 for a medical calout he did not initiate." *Id*., p. 7, Pg. ID 12. But while it is true that Plaintiff did not use the term "retaliation" in his Step I grievances, that is not the test. Paragraph R of the Policy Directive specifies that "[i]nformation provided is to be limited to the facts involving the issue being grieved...." (Emphasis in original). "The MDOC policy does not contain a precise description of the

necessary degree of factual particularity required of prisoners." Rather, "a grievant need only 'object intelligibly to some asserted shortcoming' and need not 'lay out facts, articulate legal theories, or demand particular relief.'" *Davison v. MacLean*, 2007 WL 1520892, *5 (E.D.Mich.2007) (Cohn, J.), citing to *Burton v. Jones*, 321 F.3d at 575.

The Plaintiff's *factual* allegations in the grievances against Siefker and Souder track the factual allegations in his civil complaint. It is irrelevant whether Plaintiff articulated a specific legal theory in his grievances. In substance, these grievances state facts that sufficiently exhaust the retaliation claims under MDOC policy. Defendants Siefker and Souder are therefore not subject to dismissal under 42 U.S.C. § 1997e(a).

### B. Rule 12(b)(6)[4]

For pleading purposes under *Iqbal v. Ashcroft, supra*, Plaintiff has plausibly stated a claim of retaliation against Defendants Siefker and Souder.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." As to the first element, Plaintiff alleges that filed a

---

[4] As I noted in *Twohig v. Riley*, 2013 WL 3773365, *3-4 (E.D. Mich. 2013), there has been a divergence of views concerning whether a motion to dismiss under 42 U.S.C. § 1997e(a) is properly characterized as a summary judgment motion, a Rule 12(b)(6) motion, or an unenumerated Rule 12(b) motion. In this case, Defendants' lead argument is based on exhaustion, and it is therefore understandable that they would characterize this as a summary judgment motion. However, their request for dismissal on the merits is based on the allegations contained in the complaint, and has been filed in lieu of an answer to the complaint. This part of the motion is more properly construed as being brought under Rule 12(b)(6), and I will analyze it as such. Accordingly, the Defendants who survive dismissal should not be precluded from filing a summary judgment motion under Rule 56 after discovery.

lawsuit against Defendant Barnett. There is no question that this is protected conduct under the First Amendment. He claims adverse actions–continued harassment by Siefker, including attempted assault, and destruction of property and tampering with medical records by Souder. Finally, he alleges that Siefker admitted that the adverse actions were taken in retaliation for his having filed the lawsuit, supplying the causal connection between the first two elements.

After discovery, the Defendants may or may not be able to show that they are entitled to summary judgment, and that Plaintiff's claims are fabrications. But under a Rule 12(b)(6) analysis, Plaintiff has stated a plausible retaliation claim.

Nor are these two Defendants entitled to qualified immunity. Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

It is a violation of an inmate's Constitutional rights if a prison official retaliates against him for the exercise of a First Amendment right such as filing a grievance or a lawsuit. This principle was clearly established well before the alleged acts forming the basis of Plaintiff's complaints. *See Thaddeus-X, supra*, which the Supreme Court decided in 1999. Defendants Siefker and Souder are not protected by qualified immunity.

## IV.  CONCLUSION

I recommend that Defendants' Motion for Summary Judgment [Doc. #20] be GRANTED IN PART AND DENIED IN PART, as follows:

That the Motion be GRANTED as to Defendants Rivard, Kellogg, Bugbee, Sheet-Parsons, and Barnett, and that these five Defendants be DISMISSED WITHOUT PREJUDICE under 42 U.S.C. § 1997e(a).

That the Motion be DENIED as to Defendants Siefker and Souder, without prejudice to their filing a renewed motion for summary judgment following discovery.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 14, 2017

## CERTIFICATE OF SERVICE

I hereby certify on July 14, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 14, 2017.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen