UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD KIRK BROWN,

          Plaintiff,                  No. 16-11837

v.                                District Judge Sean F. Cox
                                  Magistrate Judge R. Steven Whalen

STEVE RIVARD, ET AL.,

          Defendants.

_____ /

## REPORT AND RECOMMENDATION

On May 12, 2016, Plaintiff Ronald Kirk Brown, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint, under 42 U.S.C. § 1983.[1] Before the Court is a Motion for Summary Judgment filed by Defendants Neil Siefker and Natalie Souder [Doc. #42], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).[2] For the reasons discussed below, I recommend that the motion be GRANTED and that these Defendants be DISMISSED WITH PREJUDICE.

_____

[1] Plaintiff originally filed his complaint in the United States District Court for the Western District of Michigan, which transferred the case to this Court on May 23, 2017, based on venue [Doc. #3].

[2] Defendants Rivard, Kellogg, Bugbee, Sheet-Parsons, and Barnett have been dismissed without prejudice based on Plaintiff's failure to exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a) [Doc. #28].

## I.   FACTS

The gist of Plaintiff's complaint is that Defendant Neil Siefker, an MDOC
Corrections Officer ("CO"), retaliated against him for having filed a previous lawsuit
against staff at the St. Louis Correctional Facility.  He alleges that not only did Siefker
harass him, but he ordered other staff members to harass him, all in retaliation for the
previous lawsuit.  He also alleges that Defendant Natalie Souder, a Registered Nurse, was
part of the scheme to harass him, and that she wrongly ordered that his tinted glasses be
taken from him.

Defendant Kelly Barnett a/k/a Kelly Best ("Barnett"), who has now been dismissed
from the case, was an Assistant Deputy Warden.  Plaintiff alleges that on June 21, 2014,
Barnett ordered Siefker to "bully and harass" him in order to stymie his attempt to file a
petition in the United States Supreme Court. *Complaint*, Statement of Facts, at 1.  He
alleges that this was done in retaliation for his having filed a previous lawsuit against
Barnett.  *Id*. at 2.

Plaintiff alleges that on June 22, 2014, Siefker was in charge of the prison property
room.  *Id*. at 1.  He claims that Siefker rifled through his legal papers until he found a
copy of the previous lawsuit, and read aloud from it in front of other inmates, referring to
Plaintiff as a rat and a snitch. *Id*.  at 2.  Siefker's harassment continued, including denying
Plaintiff access to the law library.  Plaintiff claims that Siefker told other inmates that
they should kill the Plaintiff, and that Siefker told Nurse Souder to confiscate his

prescription glasses.  He alleges that Barnett and Defendant Parsons, a grievance

coordinator, told staff members to make up false medical reports, and to remove records

from his medical file.  He says that Barnett instructed CO Kellogg and CO Ott to harass

him, and that Siefker ordered Kellogg to not allow him out of his cell. *Id*. at 3-9.  Plaintiff

summarizes the situation as follows: "These Staff Members were all involved in the

continued harassment of Petitioner at every turn, every day, all day while he was housed

in the St. Louis prison facility." *Id*. at 9.

Submitted with Defendants' motion as Exhibit A is the affidavit of Neil Siefker.

Mr. Siefker states that he was not assigned, nor did he work in the property room on June

22, 2014, and did not shake down or issue Plaintiff any of his property.  *Siefker affidavit*,

¶ 3.  He states that he has never "been ordered to harass, bully, or treat any inmate

unfairly, including Prisoner Ronald Brown," and has never "ordered any staff member or

inmate to harass, bully, kill, or hurt another inmate, including Prisoner Ronald Brown."

*Id*. ¶¶ 4,5.  In reference to Plaintiff, he says that he has "treated him fairly and firmly as

per training, operating procedures, and policies set forth by the Michigan Department of

Corrections."  *Id*. ¶ 6.  Attached to Siefker's affidavit is an MDOC personnel assignment

sheet for June 22, 2014, showing that a Corrections Officer Sprague, not Sifker, was

assigned to the property room that day.

Defendants' Exhibit B is the affidavit of Natalie Souder, RN.  She states that on

July 11, 2014, when Plaintiff came to Healthcare to pick up medication, she noted that he

was wearing tinted glasses.  When questioned about him, Plaintiff said that they were his personal glasses and that he had purchased them himself.  *Souder affidavit*, ¶ 3.  Nurse Souder states that a special accommodation is needed for tinted glasses, and Plaintiff did not have approval for tinted prescription glasses.  He was issued non-tinted state glasses on January 29, 2014.  *Id*. ¶ 4.  Plaintiff's eyeglass prescription, dated August 2, 2012, did not have tint ordered.  *Id*. ¶ 6.  (A copy of the prescription is attached to Souder's affidavit).  A call was placed to his housing unit to advise custody staff of this, and as a result the "contraband glasses were obtained and given to property for the prisoner to mail out to whomever he chose."  *Id*. ¶ 5.[3]

Nurse Souder denies as false Plaintiff's allegations that ADA Barnett ordered her to make a false medical callout on June 26, 2014, and that Barnett and Grievance Coordinator Kathleen Sheets-Parsons instructed her to generate fabricated medical documents.  *Id*. ¶¶ 7, 9.  She states that on June 20, 2014,  Healthcare received the Plaintiff's request to be seen, and that RN Shelton saw Plaintiff in Healthcare on June 24, 2014.  *Id*. ¶ 8.

Defendants' Exhibit D contains excerpts of Plaintiff's deposition.  Plaintiff testified that he was issued a Notice of Intent ("NOI") to confiscate his tinted glasses, and that he was given an administrative hearing on the NOI.  *Plaintiff's Deposition*, at 24, Pg.

---

[3] Although Nurse Souder uses passive voice, I construe this paragraph to state that *she* called the housing unit, or at least directed that the housing unit be called.

ID 483.  He testified that after the hearing they took his glasses and made him send them

home.  *Id*.  He said that he bought the glasses from Michigan State Industries.  *Id*., 24-25,

Pg. ID 483-84.  Plaintiff testified he "wasn't going to give up the glasses," and that when

he resisted doing so, Officers Kellogg and Ott told him that told him that they were going

to physically remove them.  Ultimately, Plaintiff handed them the glasses.  *Id*., 25, Pg. ID

485.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary

judgment, the non-moving party must show sufficient evidence to create a genuine issue

of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).

Drawing all reasonable inferences in favor of the non-moving party, the Court must

determine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot meet that burden, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

Plaintiff brings a claim of First Amendment retaliation, alleging that the Defendants retaliated against him for having filed a previous lawsuit against Barnett.  In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by

-6-

the plaintiff's protected conduct."

## A.   Protected Activity

There is no question that filing a lawsuit is protected by the First Amendment, and thus Plaintiff has satisfied the first prong of *Thaddeus-X.*  However, his case falters of the second and third prongs.

## B.   Adverse Action

An "adverse action" is defined as one which "is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398.   The question of whether an action is adverse is an objective one which does not depend upon how the particular plaintiff reacted.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

However, the plaintiff must show more than a *de minimis* level of action by the defendant.  *See Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Bell v. Johnson,* 175 F.3d at 606 ("[T]he purpose of the standard is to avoid trivializing the First Amendment by eliminating suits based upon insignificant acts of retaliation.").

The alleged adverse action does itself not have to rise to the level of a constitutional violation under the *Thaddeus-X* test.  ("An injury may be sufficient to confer standing in a retaliation case and yet be insufficient to be redressable under

constitutional tort law"). *Thaddeus-X*, 175 F.3d at 397, fn. 13.  However, in her

concurring opinion in *Thaddeus-X*, Judge Kennedy observed that "it is unlikely that

actions that are within the *Sandin* [*v. Connor*, 515 U.S. 472 418 (1995)] limits would

deter a prisoner from filing a lawsuit." 175 F.3d at 408.[4]

      First, Nurse Souder merely informed staff that Plaintiff was in possession of tinted

glasses for which he had not been given a special accommodation, as required by MDOC

policy.  Defendant's Exhibit C is MDOC Policy Directive 04.07.112, which provides for

"special accommodation notices" for medically necessary items, including prescription

eyeglasses that are authorized by the institution.  Plaintiff admitted, both to Nurse Souder

and in his deposition, that he had purchased the tinted glasses himself.  Plaintiff did have

a prescription for non-tinted glasses, and concedes in his response that he had his state-

issued prescription glasses [Doc. #46, Pg. ID 499].  Informing staff that Plaintiff was in

violation of MDOC policy by possession of contraband cannot be considered an adverse

action.  In addition, Plaintiff was given an NOI and afforded a hearing, again in

conformity with MDOC policy, before his glasses were confiscated.  Finally, Plaintiff

offers no evidence, apart from his own speculation, that Siefker ordered Nurse Souder to

initiate the confiscation of his glasses, or that anyone directed Souder to fabricate medical

---

[4]

In *Sandin*, the Supreme Court held that to support a due process claim in a prisoner
case, the Plaintiff must prove that he suffered some restraint or adverse consequence
which imposed an "atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life." *Id*, 515 U.S. at 484.

records.

In response to the Defendants' summary judgment motion, Plaintiff has submitted

a number of exhibits, consisting primarily of copies of grievances and letters/complaints

that he wrote to the Warden's, Inspector's Offices at the St. Louis Correctional Facility,

and other State officials.  This unsworn material, similar to what Plaintiff submitted with

his complaint, is insufficient to defeat a motion for summary judgment.  In *McDougald v.*

*Mahlman*, 2018 WL 3872322, at *3 (S.D. Ohio Aug. 15, 2018), report and

recommendation adopted, 2018 WL 4566353 (S.D. Ohio Sept. 24, 2018), the Court

noted:

> "In opposing a defendant's properly supported motion for summary
> judgment, a plaintiff must 'designate specific facts in affidavits,
> depositions, interrogatories, or other factual material' from which a
> reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail*
> *Med. Staff Pers*., 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). A plaintiff
> 'cannot rest on the mere allegations of the pleadings.' *Id.* at 851-52 (holding
> that a pro se party cannot rely on allegations or denials in unsworn filings
> when opposing a motion for summary judgment)."

Here, Plaintiff has not offered any factual support, beyond his own conclusions

and this unsworn material, to rebut Defendant Siefker's affidavit showing he (Siefker)

engaged in any bullying or retaliatory actions.  That is sufficient in itself to grant

summary judgment to Siefker.[5]  In addition, even crediting Plaintiff's allegations

---

[5] Plaintiff has submitted over 100 pages of single-spaced material purporting to
detail Siefker's pattern of bullying not only him but other inmates. But it is not for the
Court to sift through the record for material issues of fact. *Sixty Ivy Street Corp. v.*
*Alexander*, 822 F.2d 1432, 1479-80 (6th Cir. 1987).  The court need only determine

Case 2:16-cv-11837-SFC-RSW   ECF No. 50, PageID.666   Filed 02/13/19   Page 10 of 13


contained in these grievances and letters, it does not appear that this Defendant undertook any "adverse actions" that would deter a person of ordinary firmness from engaging in the protected activity.  Plaintiff has complained that Siefker used his full name when he came to the law library, making comments such as "Here's the famous Mr. Ronald Kirk Brown;" required him to have his pass to the law library signed; and refused to let him attend the law library without a pass.[6]  It seems fair to surmise that the Plaintiff has a problem with CO Siefker, and perhaps there may even be a mutual dislike.  But while Plaintiff may have found these actions irritating, they were nothing more that "ordinary incidents of prison life," and do not rise to the level of adverse actions under *Thaddeus-X*.[7]

## C.    Causal Connection

The third element of a retaliation claim is the showing of a causal connection between the protected conduct and the adverse action. *Thaddeus-X, supra*, 175 F.3d at 399.  The subjective motivation of the defendants is material to this element. The plaintiff

---

"whether the *evidence* presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (emphasis added).

[6] Defendants correctly point out that the exhibits Plaintiff submitted with his complaint show that he had regular access to the law library. *Brief in Support of Defendants' Motion*, at 4, Pg. ID 450, citing Exhibits 31 and 32 to Plaintiff's complaint [Doc. #1], Pg. ID 99-100.

[7] Plaintiff alleged in his complaint that Siefker told other inmates to kill him. This would qualify as an adverse action. However, Plaintiff has offered no evidence to support this claim.

has the burden of establishing that his protected conduct (in this case, the filing of a lawsuit) was a motivating factor behind any harm.

As with the adverse action prong of a retaliation claim, Plaintiff has not provided any evidence, other that his unsworn letters and grievances, that either Siefker's or Souder's interactions with him were motivated in any part by his having filed a lawsuit against Barnett.

Plaintiff has provided no evidence to rebut Siefker's affidavit that he was not working in the property room in the day in question.  Siefker's affidavit is corroborated by the work schedule showing that CO Sprague was assigned to the property room on June 22, 2014.  Nor is there any evidence, again beyond Plaintiff's speculation, that Assistant Deputy Warden Barnett or anyone else instructed Siefker or Souder to bully and harass him. Indeed, Plaintiff's allegation is that Barnett initiated the scheme to harass him because he had filed a lawsuit against Barnett. He does not allege that he filed a previous lawsuit against Barnett.  In other words, he claims that Siefker's retaliation was derivative of Barnett's.  Yet, he provides no evidence to substantiate his speculation.

In terms of the confiscation of his eyeglasses, the record shows that Nurse Souder's actions were motivated not by a decision to retaliate, but by her knowledge that Plaintiff's possession of contraband tinted glasses was contrary to MDOC policy. If a defendant can show that she would have taken the same action in the absence of protected activity, she is entitled to prevail on summary judgment. *Thaddeus-X*, at 399.

-11-

The moving party need not support a summary judgment motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.*, 477 U.S. at 325). Here, the Plaintiff has failed to provide the Court with any evidence substantiating his retaliation claim; summary judgment is therefore appropriate.

## IV.   CONCLUSION

I recommend that Defendant Siefker and Souders' motion for summary judgment [Doc. #42] be GRANTED and that those two Defendants be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

-12-

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2019




### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen